# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| SANDRA GREENWELL | CIVIL ACTION NO. 04-2427 |
| VERSUS | JUDGE ROBERT G. JAMES |
| STATE FARM INSURANCE COMPANY | MAG. JUDGE JAMES D. KIRK |

# RULING

Plaintiff Sandra Greenwell ("Greenwell") brings this suit against the Defendant State Farm Insurance Company ("State Farm") alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and violations of her substantive rights and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

Pending before the Court is a Motion for Summary Judgment [Doc. No. 21] filed by State Farm. Greenwell has filed a memorandum in opposition to the Motion for Summary Judgment [Doc. No. 29]. State Farm has filed a Reply [Doc. No. 32]. For the following reasons, State Farm's Motion for Summary Judgment is hereby GRANTED.

## I.   FACTS AND PROCEDURAL HISTORY

Greenwell began her employment with State Farm in 1984. In 1994, Greenwell had a son, Rayne Greenwell. Between 1999 and 2002, Greenwell requested, and was approved for, leave under the FMLA to care for her son, who suffers from severe asthma.[1]

---

[1] In 1999, Greenwell was also approved for FMLA leave for her own serious health condition.

1

Darren Gomez ("Gomez") and Sherry Griffin ("Griffin") were Greenwell's supervisors. Between June 12, 2002, and February 28, 2003, Greenwell received several written warnings concerning her non-FMLA protected absences, dependability, lack of teamwork, and uncooperative attitude. During this time, Gomez met with Greenwell on a regular basis to assist her in improving her performance in these areas. Gomez documented these meetings in written reports to Judy Warren ("Warren"), the Life Company's Superintendent for Underwriting.[2]

While Greenwell improved in several areas, including her non-FMLA protected absences, she continued to have attendance problems. As a result, on October 21, 2002, her non-FMLA protected absences were suspended. On January 9, 2003, Gomez reported to Warren that the suspension of Greenwell's non-FMLA protected absences would continue because her attendance had not improved sufficiently. Gomez also warned Greenwell that if her attendance did not improve she would face disciplinary actions, including probation or termination.

On February 28, 2003, Griffin and Gomez again told Greenwell that her non-protected absences were excessive and that if she did not improve her attendance she would be terminated.

On March 31, 2003, Greenwell was absent from work. Greenwell called that day and told Griffin that her son had fallen in a canal and scraped his legs. On April 1, 2003, Greenwell returned to work and wrote an e-mail to Griffin explaining the accident and inquiring into whether she could be a part-time employee. Griffin told Greenwell that she would look into whether she could be a part-time employee and instructed her to secure her leave under the

---

[2] See State Farm's Exhibit D to its Motion for Summary Judgment (memoranda dated June 12, 2002; June 19, 2002; June 27, 2002; July 16, 2002; August 5, 2002; August 19, 2002; September 19, 2002; October 21, 2002; November 21, 2002; January 9, 2003; and February 28, 2003).

2

FMLA.

Although Greenwell had FMLA leave remaining, she did not make a request for FMLA leave prior or subsequent to her absence. State Farm terminated Greenwell because of her history of poor attendance. While the parties disagree as to the exact date Greenwell was terminated, it appears that she was terminated sometime between April 1 and April 4, 2003.

On November 30, 2004, Greenwell filed suit in this Court alleging violations of the FMLA and Title VII. On December 9, 2005, State Farm filed a Motion for Summary Judgment. On January 16, 2006, Greenwell filed a Memorandum in Opposition to the Motion for Summary Judgment. On February 10, 2006, State Farm filed a Reply.

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party

cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Title VII

State Farm argues that Greenwell's claims of sexual harassment and retaliation in violation of Title VII cannot be maintained because she was not a member of the class the statute was designed to protect and the alleged conduct was not severe or pervasive. In Greenwell's memorandum in opposition, she concedes that she cannot maintain her Title VII claims. After review, the Court finds that summary judgment is appropriate on Greenwell's Title VII claims, and they are DISMISSED WITH PREJUDICE.

### C. Family and Medical Leave Act

The FMLA attempts to balance the needs of the workplace against the needs of families. 29 U.S.C. § 2601. The FMLA allows an eligible employee to take twelve work weeks of leave in a twelve-month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the

4

employee, if such spouse, son, daughter, or parent has a serious health condition." *See* 29 U.S.C. § 2612(a)(1)(C). The FMLA contains prescriptive obligations to grant eligible employees substantive rights guaranteed by the FMLA and proscriptive obligations not to penalize employees for exercising these rights. *See Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999).

### 1. Serious Health Condition

A serious health condition entitling an employee to FMLA leave means an "illness, injury, impairment, or physical or mental condition that involves" either inpatient care or continuing treatment. *See* 29 C.F.R. § 825.114(a)(1) and (2). Generally, the condition must involve a period of incapacity "of more than three consecutive calendar days" that involves treatment by a health care provider. 29 C.F.R. § 825.114(a)(2)(i)(A-B). However, a chronic serious health condition "[m]ay cause episodic rather than a continuing period of incapacity (e.g. asthma, diabetes, epilepsy, etc.)." 29 C.F.R. (a)(2)(iii)(C). Such chronic serious health conditions are also covered by the FMLA, even if there was no treatment by a health care provider and the condition involves a period less than the required period of incapacity of more than three consecutive calendar days.

Greenwell argues that she was absent on March 31, 2003, because she was caring for her son. Greenwell states in her deposition that she called Griffin on March 31, 2003, and told her that "Rayne . . . fell down in a canal. He . . . slid down on tin, rusted tin, and I told her that, you know, *he was pretty messed up and his asthma and all was acting up* and I just wanted to keep a close eye on him [Rayne]." (Emphasis added).

On April 1, 2003, Greenwell sent an e-mail to Griffin describing why she was absent

5

from work the previous day and asking for assistance in improving her attendance. The e-mail reads in pertinent part:

> Could I be a part-time employee? If so, what do I have to do. I figured half days would give me time to administer Raynes asthma treatment instead of having loads of absences I have with him. Life company has zero work. If we were told we could leave when zeroed out 90% of us would be here 1 to 2 hours tops. I need help in getting my attendance on track, I can't do it with the way things are right now. *If I could make it to the end of May, I'd have a lot of days fall off, but that's usually when his seasonal flare ups are. Sunday he and a bunch of boys were playing near a deep canal by our levy and they decided it's be fun to slide down this old piece of rusty tin they found. He was so skinned up, another boy jumped in to save him out of the muddy nasty water, fell beside Rayne, into a piece of glass that sliced his hand really good. I was out yesterday with Rayne. . .*

(Emphasis added).

State Farm argues that Greenwell's absence was not because of her son's asthma and that she was not absent for the required time period of more than three days.[3] State Farm argues that while Greenwell made reference to her son's asthma in her e-mail correspondence to Griffin on April 1, 2003, it was completely unrelated to her explanation for her absence on March 31, 2003. State Farm also argues that Greenwell admits in her affidavit and deposition testimony that she was absent on March 31, 2003, to take care of her son's scraped knees and ankles.

While Greenwell stated that she was taking care of her son's scraped knees and ankles, she also told Griffin that her son's asthma was acting up. Because asthma may be a chronic serious health condition, and because Greenwell has presented evidence from Dr. Lawrence J. Danna that her son suffered from severe asthma, the Court finds that an issue of fact exists as to

---

[3]State Farm argues that Greenwell does not satisfy the requirements of a serious health condition because the condition must involve a period of incapacity "of more than three consecutive calendar days" that involves treatment by a health care provider. 29 C.F.R. § 825.114(a)(2)(i)(A-B). However, Greenwell also mentioned her son's asthma, a chronic serious health condition.

6

whether she was absent due to a serious health condition.

### 2. Notice

While an issue of fact exists as to whether Greenwell was absent due to a serious health condition, Greenwell must still give proper notice to State Farm to be entitled to substantive rights under the FMLA.

The FMLA requires an employee to provide her employer with at least thirty days advance notice if the need for leave is foreseeable. 29 C.F.R. § 825.302. When an absence is not foreseeable, the employee should give notice to the employer "as soon as practicable under the facts and circumstance of the particular case." 29 C.F.R. § 825.303(a). "It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Id*. "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b).

The timing and content of the notice depends on the facts and circumstances of each individual case. *See Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *See Id*. (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

State Farm argues that, even though Greenwell knew how to file for FMLA leave, she never requested FMLA leave either before or after her absence on March 31, 2003. State Farm contends that because it did not receive notice of a FMLA-protected absence, it terminated

Greenwell on April 3, 2003, for poor attendance. State Farm also contends that it discharged any duty it had to inquire into Greenwell's absence when Griffin suggested she seek FMLA coverage on April 1, 2003.[4]

Greenwell disagrees. She states that she notified State Farm on April 1, 2003, that she was absent because her son was hurt while playing in a canal and his asthma was acting up. She contends that because State Farm knew she had a son with asthma, and because she had requested FMLA leave in the past, State Farm had a duty to inquire further.

The facts in this case are very analogous to those presented in *Satterfield*. In *Satterfield*, the plaintiff claimed she was entitled to leave under the FMLA when she was absent from work because of "pain in her side" and because she was "sick." *Satterfield*, 135 F.3d at 980. The plaintiff claimed this information gave sufficient notice to her employer that she was entitled to leave under the FMLA. The Fifth Circuit noted that the plaintiff knew how to obtain leave from her employer because she had requested and received leave pursuant to its policies in previous years, yet in the weeks proceeding the absence she claimed should be protected, she had three unexcused absences. *Id*. Under these circumstances, the Fifth Circuit found that "no rational trier of fact could conclude that the meager information [plaintiff] imparted to [her employer] was sufficient to require [her employer] to seek additional information about her condition and whether it qualified for FMLA protection." *Id*. at 980-81.

The Court finds that Greenwell did not provide adequate notice to State Farm. Similar to

---

[4]Greenwell states that she was fired on April 1, 2003. However, Griffin wrote a memo to Warren on April 1, 2003, *recommending* Greenwell be terminated for attendance problems, not actually terminating her. Greenwell's payroll timecard, employee data profile, and termination memo all indicate that she worked until April 3, 2003. Greenwell also stated in her Complaint that she was terminated on April 3, 2003.

8

*Satterfield*, Greenwell knew how to obtain FMLA leave because she had done so several times over the years. In addition, prior to her absence that she claims is protected, Greenwell had a history of absences that were not protected by the FMLA.

"While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant." *Id.* (citing *Johnson v. Primerica*, 1996 WL 34148 at *5 (S.D.N.Y. 1996)). In this case, Greenwell's brief telephone discussion with Griffin on March 31, 2003, and e-mail to Griffin on April 1, 2003, did not provide sufficient information to State Farm that she was seeking leave under the FMLA. *See Id.* (citing *Cehrs v. Northeast Ohio Alzheimer Research Center*, 959 F. Supp. 441, 449 n. 9 (N.D. Ohio 1997) ("While notice to the employer may be informal and need not invoke the FMLA by name, the employer, at a minimum, must receive information sufficient to make it evident that the leave requested is qualifying leave under the FMLA.")).

Griffin also told Greenwell to attempt to secure her absence for FMLA leave on April 1, 2003. However, Greenwell did not file for FMLA leave prior to her termination. While an employer has a duty to obtain additional information from an employee to determine whether an employee is seeking leave under the FMLA, Griffin clearly discharged her duty when she told Greenwell to file for FMLA leave for her absence. Under these circumstances, the Court finds that Greenwell did not properly notify State Farm of leave under the FMLA, and Greenwell's claim that she is entitled to substantive rights under the FMLA is DISMISSED WITH PREJUDICE.

### 3. Retaliation

To establish a *prima facie* case of retaliation under the FMLA, the plaintiff must

9

demonstrate that (1) she is protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave. *See Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).

Once the plaintiff establishes her *prima facie* case, the employer must articulate a legitimate, non-discriminatory reason for the plaintiff's termination. *See Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319-20 (5th Cir. 1999). The plaintiff must then "produce substantial probative evidence that the proffered reason was not the true reason for the employment decision and that the real reason was the plaintiff's participation in the protected activity." *Id*. at 320.

Because the Court has previously determined that Greenwell did not provide sufficient information that would make it evident that she was taking leave under the FMLA, the Court finds that Greenwell has not satisfied the first element of her *prima facie* case. *See Seaman v. C.S.P.H. Inc.*, No. CIV. A. 3:96-CV-2165-P., 1997 WL 538751, at *21 (N.D. Tex. Aug. 25, 1997) (Plaintiff failed to satisfy first element of his prima facie case where evidence indicated that his request for leave was to take care of ailing grandmother as opposed to a serious health condition); *see also Marak v. Dallas/Fort Worth Intern. Airport Bd.*, No. 3:03-CV-1883-R, 2005 WL 1837940, at *6 (N.D. Tex. Aug. 3, 2005) (finding that although plaintiff submitted own declaration that he intended to take FMLA leave, the evidence does not suggest he engaged in a protected activity). Greenwell has not demonstrated that she provided sufficient notice to State Farm for leave under the FMLA. Thus, she cannot demonstrate that she is protected under the

FMLA, and State Farm's Motion for Summary Judgment on Greenwell's retaliation claim under the FMLA is GRANTED, and it is DISMISSED WITH PREJUDICE.

### III. CONCLUSION

For the foregoing reasons, State Farm's Motion for Summary Judgment [Doc. No. 21] is GRANTED, and Greenwell's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 13th day of March, 2006.

*Robert G. James*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE